United States District Court
for the
Southern District of Florida

| | | |
|---|---|---|
| Blanca Nelly Diaz, Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Civil Action No. 20-62583-Civ-Scola |
| Hector Leonardo Amezquita and | ) | |
| Sandra Catalina Daza Munoz, | ) | |
| Defendants. | ) | |

### Order Denying the Defendants' Motion to Dismiss

Plaintiff Blanca Nelly Diaz seeks damages from Defendants Hector Leonardo Amezquita and Sandra Catalina Daza Munoz, husband and wife, as a result of their trafficking her to the United States, from Colombia, subjecting her to involuntary servitude and captivity, and withholding her pay for fourteen years. (Compl. ¶ 1, ECF No. 1.) The Defendants have filed a motion to dismiss, arguing (1) Diaz's complaint is a shotgun pleading; (2) one of Diaz's human-trafficking claims is beyond the statute of limitations; (3) civil relief is not available for Diaz's human-trafficking claims; (4) Diaz's claims for unjust enrichment and quantum meruit are preempted by the Fair Labor Standards Act; and (5) Diaz fails to state a claim for false imprisonment because her allegations are contradictory. (Defs.' Mot., ECF No. 16.) Diaz opposes the motion. (Pl.'s Resp., ECF No. 17.) And the Defendants have timely replied. (Defs.' Reply, ECF No. 18.) After careful review, the Court **denies** the Defendants' motion. (**ECF No. 16**.)

### 1. Background[1]

Diaz began working for Amezquita in 2002, in Colombia, when she was around forty-one years old. (Compl. ¶¶ 13, 14.) At that time, Diaz cared for Amezquita's two daughters and cleaned the home. (*Id.* ¶ 14.) Six months into her employment, Amezquita married Daza Munoz. (*Id.* ¶ 15.) A year after the Defendants wed, they offered Diaz a job, working for their family in the United States. (*Id.* ¶ 16.) They promised Diaz that, if she moved to the United States to work for them, she would be paid and otherwise treated fairly and humanely. (*Id.*) The Defendants also told Diaz she would be able to return to Colombia any time she wanted. (*Id.*)

---

[1] The Court generally accepts the Plaintiff's factual allegations as true for the purposes of evaluating the Defendants' motion to dismiss. *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).

The Defendants moved to the United States and then set about procuring a visa for Diaz. (*Id.* ¶ 17.) In the meantime, while waiting for the visa, Diaz stayed in Colombia, working for Amezquita's mother. (*Id.*) Also around this time, Daza Munoz gave birth to a daughter. (*Id.*) Eventually, the Defendants arranged for Diaz to get a temporary business B-1 visa, apparently based on her status as a domestic employee, which was issued on March 9, 2005, with an expiration date of March 7, 2006. (*Id.* ¶ 18.) Diaz arrived in the United States on March 14, 2005. (*Id.* ¶ 23.) The Defendants later arranged for a second B-1 visa, on the same basis, issued on December 22, 2005, expiring on August 30, 2007. (*Id.* ¶ 24.) It does not appear any other immigration documents were ever sought or obtained.

Although the Defendants did not specify in advance what Diaz's salary would be, at the United States Embassy, Amezquita was asked to amend Diaz's employment contract to reflect payment of Florida's minimum wage. (*Id.* at ¶ 20.) Diaz did not read this contract, was not able to ask any questions about it, nor was she ever provided a copy of the contract. (*Id.*) After arriving in the United States, it appears the Defendants told Diaz her salary would be 600,000 Colombian pesos per month—equivalent to about $200 U.S. per month. (*Id.* ¶ 23.) A few months before her second visa was set to expire, the Defendants told Diaz they would not renew it, telling her they would then pay her $400 U.S. a week. (*Id.* ¶ 25.) Regardless, the Defendants never paid Diaz anything, despite her repeated requests, during the entire time that she served as their domestic employee in the United States. (*Id.* ¶ 26.)

Initially, the Defendants forced Diaz to sleep in a laundry room, outside their apartment, where she did not have access to a bathroom. (*Id.* ¶ 28.) She was not afforded a day off until about six or seven years into her employment, working around fourteen hours a day on weekdays and four-and-a-half hours a day on the weekends. (*Id.* ¶ 29.) On occasion her hours were extended, as well. (*Id.*) Diaz was also forced to work even if she was sick and was told by Amezquita that she would have to reimburse him for medication he gave her which he had, in turn, gotten from Colombia. (*Id.* ¶ 30.) Eventually, about eight or nine years ago, Diaz prevailed upon the Defendants and was able to get Saturdays and Sundays off. (*Id.* ¶ 31.)

Diaz says the Defendants subjected her to verbal and emotional abuse during the fourteen years she worked for them. (*Id.* ¶¶ 5, 37.) They also constantly monitored her, not allowing her to speak to anyone or ever discuss her immigration status. (*Id.* ¶ 32.) The Defendants also controlled all Diaz's communications with her family in Colombia, retaining access to all her text messages and calls through the cell phone they gave here. (*Id.* ¶ 35.)

The entire time Diaz worked for the Defendants, Diaz says the Defendants held her passport, preventing her from ever leaving with her identification or travel documents. (*Id.* ¶¶ 3, 27.) They forced her to continue working for them, telling her she would never get paid anything unless she continued. (*Id.* ¶ 33.) They also threatened to send her back to Colombia if she didn't keep working. (*Id.*) At one point, after Diaz asked for time off to visit Colombia, Amezquita reminded her that he knew where her family lived, which Diaz interpreted as a threat that they would be harmed, bringing her to tears. (*Id.* ¶ 34.) On one occasion, when Diaz objected to her working conditions and not being paid, Daza Munoz falsely accused Diaz of theft. (*Id.* ¶ 38.) This accusation appears to have been the final straw, prompting Diaz to contact a domestic workers' advocacy group, Miami Workers Center, which then contacted the Broward County Sheriff's Office. (*Id.* ¶¶ 6, 38, 39.) When officers arrived at the Defendants' home, on January 28, 2020, Daza Munoz surrendered Diaz's passport. (*Id.* ¶ 6.) Diaz then gathered her belongings and was transported away from the house, by the officers. (*Id.*) She then initiated this case in December 2020.

## 2. Legal Standard

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 10(b) further requires a party to "state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). "A shotgun pleading is a complaint that violates either Federal Rule of Civil Procedure 8(a)(2) or Rule 10(b), or both." *Barmapov v. Amuial*, 986 F.3d 1321, 1324 (11th Cir. 2021)

A court considering a motion to dismiss, on the other hand, filed under Rule 12(b)(6), must accept all the complaint's allegations as true, construing them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Although a pleading need only contain a short and plain statement of the claim showing that the pleader is entitled to relief, a plaintiff must nevertheless articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting Fed. R. Civ. P. 8(a)(2)) (internal punctuation omitted). A court must dismiss a plaintiff's claims if it fails to nudge its "claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

### 3. Analysis

### A. Diaz's complaint is not a shotgun pleading.

The Defendants argue Diaz's complaint should be dismissed as a shotgun pleading. (Defs.' Mot. at 4–5.) They complain that it "relies on a common core of 42 paragraphs that are incorporated into each successive [c]ount, regardless of whether the allegations relate to a claim for human trafficking, unpaid minimum wages, unpaid wages, or false imprisonment." (*Id.* at 4.) Because of this, say the Defendants, they are unable "to discern which facts relate to which claim." (*Id.*) The Court is not persuaded.

Contrary to the Defendants' position, Diaz's complaint does not fall into one of the categories of the "four rough types or categories of shotgun pleadings" identified by the Eleventh Circuit in *Weiland v. Palm Beach County Sheriff's Office.* 792 F.3d 1313, 1321 (11th Cir. 2015). Specifically, the multiple counts here do not "adopt[] the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Id.*; *see also Barmapov*, 986 F.3d at 1325 (noting the complaint there did not fall into this category because "although nine of the 19 counts incorporate almost every factual allegation in the complaint, none of them adopts the allegations in the preceding counts").

Nor does Diaz's complaint fall into one of the other three categories. It is not "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Weiland*, 792 F.3d at 1322. Nor does it fail to separate "each cause of action or claim for relief" into a different count. *Id.* at 1323. And, finally, Diaz's complaint is not one that "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Id.* Ultimately, the Court does not find that the deficiencies the Defendants identify justify striking Diaz's pleading on shotgun-pleading grounds: while the complaint is by no means perfect, it is not so poorly drafted that it "fail[s] to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* ("A dismissal under Rules 8(a)(2) and 10(b) is appropriate where it is *virtually impossible* to know which allegations of fact are intended to support which claim(s) for relief.") (emphasis in original) (otherwise cleaned up).

**B. Diaz's claims under the Victims of Trafficking and Violence Protections Act survive dismissal.**

Next, the Defendants submit (1) count one should be dismissed because it falls outside the ten-year limitations period imposed by 18 U.S.C. § 1595; (2) all five of Diaz's TVPA claims should be dismissed because her factual allegations are "contradictory" and "untenable"; and (3) the provisions of the TVPA under which Diaz seeks relief do not provide for a private cause of action. The Court finds the Defendants' arguments unavailing.

Under 18 U.S.C. § 1595(c), an action pursued under the TVPA must be commenced within ten years after the cause of action arose. 18 U.S.C. § 1595(c)(1). In count one, Diaz lodges a claim for human trafficking under 18 U.S.C. § 1590. With respect to that count, Diaz contends the "Defendants knowingly transported [her] from Colombia to the United States and harbored her in their home for the purpose of obtaining her forced, coerced, and involuntary labor." (Compl. ¶ 44.) The Defendants maintain that since Diaz "arrived in 2005 . . . her claim for human trafficking falls outside of the 10-year limitations period." (Defs.' Mot. at 5.) The Court is not convinced.

As the Eleventh Circuit has made clear, dismissal on statute-of-limitations grounds is "appropriate only if it is apparent from the face of the complaint that the claim is time-barred and only if it appears beyond a doubt that a plaintiff can prove no set of facts that toll the statute." *Sec'y of Labor v. Labbe*, 319 Fed. Appx. 761, 764 (11th Cir. 2008) (cleaned up). Here, part of count one contains allegations that are not time barred—in particular, that the Defendants continued to harbor Diaz in their home up until when law enforcement came to the house in January 2020. Further, as to violations that may be time barred, Diaz has alleged that the Defendants confiscated her passport, isolated her from anyone outside the home, monitored her communications, and threatened to send her back to Colombia without ever paying her for any of her work. Accepting these allegations as true and construing them in the light most favorable to Diaz, the Defendants' conduct prevented her from seeking legal redress until she was transported from the home by county officers in January 2020. These facts are sufficient for count one to survive dismissal on limitations grounds.

The Defendants also argue that Diaz's allegations are contradictory and untenable and therefore cannot support any of her five TVPA claims. In particular, the Defendants submit Diaz (1) never alleges she was ever actually threatened, (2) provides no facts supporting her claim that the Defendants implied her family in Colombia would be harmed, (3) cannot, in any event, premise her TVPA claims on a mere implication, (4) contradicts herself by

complaining, on the one hand, that she was held captive, while admitting she was free to leave work every weekend as well as describing the Defendants as threatening to send her back to Colombia, and (5) was able to use her cell phone to call the Miami Workers Center. (Defs.' Mot. at 5–7.) The Court disagrees with both the way the Defendants have characterized Diaz's allegations as well as their assessment of the implication of her allegations.

To begin with, the Court finds Diaz has indeed alleged she was threatened. She alleges the Defendants repeatedly told her she would not get any money at all unless she continued to work for the family. (Compl. ¶ 33.) Diaz also says she was told the Defendants would send her back to Colombia, without paying her anything, unless she continued to work for them. (*Id.*) At one point, when Diaz asked for a break, to return to Colombia for a few months, Amezquita responded by telling her he knew where her family lived. (*Id.* ¶ 34.) Construing this fact in the light most favorable to Diaz, this could be interpreted as a threat to harm Diaz's family. Combined with Diaz's assertion that the Defendants' retained sole possession of her passport, these allegations amount to threats, rising far above what the Defendants portray as mere implications. Additionally, the Court finds no inconsistency between Diaz's allegations of captivity and her potential for escape when the Defendants placed her in fear: the Defendants told Diaz that if she stopped working, they would withhold her pay and have her deported to Colombia. These facts, taken as true, rebut the Defendants' argument that Diaz's allegations fail to state a claim.[2]

Finally, the Defendants argue that all five TVPA counts must be dismissed because of the "absence of a private right of action in any of the statutory sections cited." (Defs.' Mot. at 8.) On the other hand, the Defendants also say the five counts "must be combined into a single count for relief pursuant to § 1595." (*Id.*) The Court finds the Defendants' position meritless. As the Defendants concede, 18 U.S.C. § 1595 provides that an "individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator . . . in an appropriate district court of the United States and may recover damages and reasonable attorneys fees." 18 U.S.C. § 1595(a). By its plain meaning, this affords Diaz a private right of action for the five TVPA claims she has alleged. Further, the Defendants have not proffered any support, and the Court is unable

---

[2] The Defendants have attached a police report, completed by the Broward Sheriff's Office, reflecting the reporting officer's narrative of the night officers responded to the Defendants' home in January 2020. (Ex. A, ECF No. 16-1.) The Court declines to take judicial notice of this incident report: it is neither "(1) central to the plaintiff's claim," nor are its contents "(2) undisputed." *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005). Without this document, there is no support for the Defendants' contention that Diaz admitted she was free to leave every weekend. Further, and in any event, even if the Court were to take the report into consideration, it would not alter the above analysis or the Court's ultimate conclusion.

to find any, for their contention that Diaz must lump each count, alleging violations of different sections of the TVPA and based on distinct theories of liability, into one single claim.

In sum, the Court is not persuaded by the Defendants' presentation that any of Diaz's TVPA claims should be dismissed or repleaded, combined into one count.

### C. Diaz's quantum meruit and unjust enrichment claims are not preempted.

Turning their attention to counts eight and nine, in which Diaz seeks redress for her unpaid wages through quantum meruit and unjust enrichment claims, the Defendants argue preemption under the FLSA warrants dismissal. (Defs.' Mot. at 8–9.) According to the Defendants, the exclusive remedy for *any* claim for unpaid wages, is the FLSA. (*Id.* at 9.) The Court disagrees.

While it is certainly true that courts regularly "dismiss duplicative state law common law claims where they rely on proof of the same facts" as an FLSA claim, *Bule v. Garda CL Se., Inc.*, 14-21898-CIV, 2014 WL 3501546, at *2 (S.D. Fla. July 14, 2014) (Moreno, J.), the Defendants have not shown that Diaz's state-law claims here rely on the Defendants' violation of the FLSA. Instead, in her quantum meruit and unjust-enrichment claims, Diaz seeks restitution for benefits she conferred on the Defendants for years of uncompensated childcare and domestic services. These state-law claims do not rely on the Defendants' being found in breach of the FLSA, nor do they rely on Diaz's status as the Defendants' employee under the FLSA. Instead, Diaz seeks compensation that the Defendants promised to pay her and compensation for the benefits Diaz provided to the Defendants for years of unpaid-for services. As such, based on the complaint's allegations, the Defendants have not shown that these counts are preempted. *See Samuels v. S&J Crazy Lizards Entm't, LLC*, 18-80356-CIV, 2018 WL 5851286, at *4 (S.D. Fla. Aug. 3, 2018) (Brannon, Mag. J.) (concluding that the plaintiff's "claims of *quantum meruit* or unjust enrichment are materially distinct from the FLSA claims in that" they do not seek "overtime or minimum wage pay" and "[t]hus, they are not subject to FLSA preemption").

### D. Diaz has stated a claim for false imprisonment.

Finally, the Defendants argue Diaz's count for false imprisonment must be dismissed. They submit that, because Diaz "was free to leave Defendants' home every weekend, vacationed at length in Colombia, and was free to leave, there could be no set of facts that Plaintiff could plead to establish a claim of false imprisonment." (Defs.' Mot. at 10.) The Defendants miss the mark.

First, the Defendants mischaracterize the facts Diaz alleges in her complaint, apparently relying on statements from the incident report, of which the Court has declined to take judicial notice. Accordingly, based on the complaint alone, there is no support for the Defendants' contention that Diaz was free to leave the home on the weekends or that Diaz ever vacationed in Colombia.

Secondly, the Court disagrees with the Defendants' contention that, in order to state a claim for false imprisonment, a plaintiff "must allege that she was *physically* detained against her will." (Defs.' Mot. at 10 (emphasis added).) To the contrary, "[u]nder Florida law the restraint of a person giving rise to false imprisonment can be accomplished by threats as well as force." *Meadows v. F. W. Woolworth Co.*, 254 F. Supp. 907, 909 (N.D. Fla. 1966) (citing *Lewis v. Atlantic Discount Co.*, 99 So. 2d 241 (1st D.C.A.Fla.1957)). As the Defendants themselves acknowledge, all that is required to establish a claim for false imprisonment are the following: "1) the unlawful detention and deprivation of liberty of a person; 2) against that person's will 3) without legal authority or 'color of authority' and 4) which is unreasonable and unwarranted under the circumstances." *McDonough v. Mata*, 489 F. Supp. 3d 1347, 1362 (S.D. Fla. 2020) (Moreno, J.) (quoting *Harder v. Edwards*, 174 So. 3d 524, 530 (Fla. 4th DCA 2015)). Physical detention is not required.

In sum, the Defendants' arguments do not persuade the Court that Diaz's false-imprisonment claim should be dismissed: the Defendants mischaracterize the facts and rely on a misstatement of the law.

### 4. Conclusion

As set forth above, the Court **denies** the Defendants' motion to dismiss (**ECF No. 16**). The Defendants must respond to the complaint on or before **June 4, 2021**.

**Done and ordered** at Miami, Florida, on May 27, 2021.

Robert N. Scola, Jr.
United States District Judge